IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION


JAMES N. LEWIS                                                                                      PLAINTIFF


         v.                            Civil No. 2:14-cv-02211-PKH-MEF


CAROLYN W. COLVIN, Commissioner
Social Security Administration                                                                     DEFENDANT


**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, James Lewis, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. § 423(d)(1)(A).  In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

**I.     Procedural Background:**

Plaintiff filed his application for DIB on May 29, 2012, alleging an onset date of May 7, 2012, due to a heart attack in September 2011, chest pain, shortness of breath, and arthritis.  Tr. 124-127, 145, 172-173, 179, 193.  The Commissioner denied his application initially and on reconsideration.  Tr. 87-90.  At the Plaintiff's request, an Administrative Law Judge ("ALJ") held a hearing on May 1, 2013.  Tr. 35-69.  Plaintiff was present and represented by counsel.

At the time of the hearing, Plaintiff was 63 years old, possessed a high school education and a commercial driver's license. Tr. 39, 124, 145-146. He had past relevant work ("PRW") experience as a concrete mixing truck driver and delivery truck driver. Tr. 39-44, 146, 155-163. Further, he began drawing reduced Social Security Retirement benefits at age 62. Tr. 44.

On August 16, 2013, the ALJ concluded that the Plaintiff's coronary artery disease status post myocardial infarction and stenting was severe, but concluded it did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Tr. 15-16. He determined that the Plaintiff could perform a full range of medium work. Tr. 16. With the assistance of a vocational expert, the ALJ found the Plaintiff could perform his PRW as a concrete mixing truck driver and delivery truck driver as these positions are actually and generally performed. Tr. 21-22.

The Appeals Council denied the Plaintiff's request for review on September 22, 2014. Tr. 1-6. Plaintiff subsequently filed this action. ECF No. 1. This matter is before the undersigned for report and recommendation. Both parties have filed appeal briefs, and the case is now ready for decision. ECF Nos. 13, 14.

**II.     Applicable Law:**

This court's role is to determine whether substantial evidence supports the Commissioner's findings. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a

2

contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the decision of the ALJ. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § 404.1520(a)(4). The fact finder considers the Plaintiff's age, education, and work experience in light of his or her residual functional capacity, only if he reaches the final stage. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. § 404.1520(a)(4)(v).

### III.     Discussion:

On appeal, the Plaintiff contends that the ALJ made the following errors: 1) failed to fully develop the record; 2) improperly discredited his subjective complaints; and, 3) failed to incorporate all of the Plaintiff's impairments into his RFC determination. The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and are repeated here only to the extent necessary.

#### A.     Develop the Record:

In his first argument, the Plaintiff insists that because his true work related restrictions are not evident from the record, the ALJ should have sought further clarification regarding the severity of his impairments. The ALJ does owe a duty to a claimant to develop the record fully and fairly to ensure his decision is an informed decision based on sufficient facts. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). However, the ALJ is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record. *Whitman v. Colvin*, 762 F.3d 701, 707 (8th Cir. 2014) (quoting *Clark v. Shalala*, 28 F.3d 828, 830-31 (8th Cir. 1994). While "[a]n ALJ should recontact a treating or consulting physician if a critical issue is undeveloped," "the ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010) (quotation, alteration, and citation omitted).

In the present case, the evidence reveals the following. Plaintiff suffered a heart attack in September 2011. He presented in Dr. Lance Burton's office on September 8, 2011, three days after the chest pain, nausea, and vomiting began. Tr. 220, 222. Following an abnormal EKG revealing a recent inferior infarction, Dr. Barton sent him to the hospital. On arrival, doctors treated the Plaintiff, fearing he may have sustained an acute inferior wall myocardial infarction

three days earlier. Tr. 203-214, 234-238, 247-268, 312-315, 320-322. His recurrent chest discomfort was also indicative of a possible residual myocardium. Plaintiff underwent an urgent cardiac catheterization, which revealed a tight right coronary lesion. Doctors treated this via a drug-eluting stent. They then diagnosed him with an acute inferior myocardial infarction and assigned an American Society of Anesthesiologist ("ASA") classification of four, indicating severe systemic disease that is a constant threat to life. Doctors released him three days later, in stable condition with no complaints of chest pain.

On September 27, 2011, Plaintiff presented in follow-up. Tr. 229, 307. He reported doing well with only occasional arrhythmia and no residual chest pain, shortness of breath, dyspnea on exertion, paroxysmal nocturnal dyspnea, orthopnea, lower extremity edema, or claudication. In fact, the Plaintiff admitted to walking one mile without difficulty. He also requested that the doctor complete additional paperwork so he could return to work. The doctor noted that the Plaintiff drove a ready mix dump truck, requiring him to climb ladders and carry a concrete chute.

On October 14, 2011, Plaintiff underwent nuclear cardiology imaging with exercise testing revealing scarring from his heart attack and no visible ischemia. The gated SPECT revealed a very slight inferior hypokinesis relative to the remaining segments, with an overall ejection fraction rate of 50 percent.

On January 31, 2012, Plaintiff returned with some complaints of tightness in his chest. Tr. 228, 306, 308. However, he denied radiation or other associated symptoms. And, he admitted that it was nothing like the pain he felt during his heart attack. At this time, the Plaintiff reported working full time. He had worked 55 hours the previous week, stating that he worked 40 hours plus when the weather permitted. Slower weeks consisted of approximately 27 hours per week. An examination revealed clear lungs and a normal coronary exam. The doctor diagnosed him with

5

stable arteriosclerotic coronary artery disease, hyperlipidemia, and mood changes status post myocardial infarction. The doctor prescribed Citalopram, and the Plaintiff indicated that he was trying to stop smoking.

On February 6, 2012, Plaintiff presented in Dr. Barton's office coughing up blood. Tr. 219. As this is a symptom of lung cancer, Dr. Barton recommended a CT scan of the chest, but the Plaintiff refused. Instead, he reported having a similar episode a few years prior for which antibiotics were effective. A chest x-ray revealed a left suprahilar infiltrate compatible with pneumonia. Tr. 221. Accordingly, Dr. Barton prescribed an antibiotic and a cough medication. This appears to have been an isolated and acute problem, as there are no additional records to indicate that this problem recurred.

On May 17, 2012, Plaintiff returned for a cardiology follow-up with continued complaints of mood changes status post myocardial infarction. Tr. 304-350. He also reported decreased exercise tolerance since his heart attack. However, an exam was essentially unremarkable. Further, the doctor noted that the Plaintiff had not filled the Citalopram previously prescribed. And, there is no further evidence to indicate that the Plaintiff suffered from a mood disorder.

On July 2, 2012, Plaintiff established as a new patient with the Veteran's Administration Clinic. Tr. 274-287, 339-340, 344-54. Although he did report dyspnea, he denied shortness of breath or current chest pain. He disclosed some mild chest pain, but denied anything recent. Further, the Plaintiff recounted an occasional cough with no accompanied wheezing. A physical exam revealed a normal heart rate and rhythm with clear lungs. The doctor made no changes to his medications that were said to include Simvastatin, Effient, and Aspirin.

On July 23, 2012, the doctor ordered an echocardiogram to investigate his exertional dyspnea. Testing revealed mitral valve leaflets mildly thickened with mild sagging of the anterior leaflet and an ejection fraction rate of 60%. Tr. 288-289, 326-331, 333-338, 349.

On August 14, 2012, Dr. Karmen Hopkins, a non-examining consultative physician reviewed the Plaintiff's medical records and completed an RFC assessment. Tr. 290-297, 335-336. She determined that the Plaintiff could perform medium level work. Dr. Charles Friedman affirmed this assessment on October 16, 2012. Tr. 298-300.

On January 30, 2013, Plaintiff returned to Dr. Barton's office for a wellness visit and fasting labs. Tr. 356. Again, he denied chest pain, shortness of breath, dyspnea on exertion, and paroxysmal nocturnal dyspnea. Dr. Barton diagnosed him with coronary artery disease and elevated lipids.

This same date, Dr. Barton completed a medical source statement. Tr. 322-324. He indicated that he had treated the Plaintiff since May 9, 2007, for a heart attack and arthritis. Dr. Barton opined that he could sit for a total of four hours during an eight-hour workday, stand for a total of three hours, and walk for one hour. Further, he stated that the Plaintiff could occasionally lift 11-50 pounds; carry 11-20 pounds; bend; crawl; climb; reach above his head; stoop; and, be exposed to unprotected heights, marked temperature changes, and noise and never carry more than 20 pounds; squat; crouch; kneel; or tolerate exposure to dust, fumes, and gases. Dr. Barton also found that the Plaintiff would need to take unscheduled breaks; would require a job with a sit/stand/walk at will option; and, would likely miss three days of work per month due to his impairments.

On August 13, 2013, the Plaintiff returned to the VA for an annual examination with Dr. Brent Witherington. Tr. 440-442. He denied any major changes since his last visit, reporting only

7

mild chest pains, which he rated as a two or three on a ten-point scale. The Plaintiff indicated that the mild discomfort was intermittent, lasting two to three minutes. He described the sensation as akin to having "gas and you have to belch." His cholesterol was good, and he was taking the Pravastatin as prescribed. An examination revealed only diminished breath sounds, but no wheezing or cardiac irregularities. Dr. Witherington diagnosed him with hyperlipidemia, coronary artery disease status post myocardial infarction and stent placement, chronic obstructive pulmonary disease ("COPD"), macrocytic anemia, and tobacco use disorder. He continued the Pravastatin; initiated a trial of Lisinopril and Metoprolol; added Combivent; prescribed nicotine gum; and, ordered pulmonary function tests, an EKG, a chest x-ray, and a nuclear stress test.

On September 4, 2013, pulmonary function studies showed a moderate obstructive ventilator defect. Tr. 382-388. Two days later, a stress test revealed a medium sized inferior and basal inferoseptal wall infarction with no definite evidence of ischemia. Tr. 359-368, 372-376, 389-406. His ejection fraction rate was 50 percent post stress and 49 percent at rest.

On September 9, 2013, Plaintiff underwent a hearing assessment. Tr. 371. Testing revealed a bilateral sensorineural hearing loss with excellent word recognition. He was a candidate for receiver-in-the-canal hearing aids, but never pursued them.

After reviewing the evidence, the undersigned finds sufficient evidence upon which the ALJ could base his decision. Given that the overall record does not support the extent of limitation assigned by Dr. Barton, we can find no reason for the ALJ to recontact him to clarify his assessment. Further, given the seemingly unremarkable physical exams, the Plaintiff's reports of only occasional mild discomfort, and the absence of stress test and cardiac catheterization results to support the Plaintiff's allegations of disability, we can find no reason to remand the matter for a consultative examination.

B. **Subjective Complaints:**

Plaintiff's second argument centers around the ALJ's alleged failure to provide his reasons for discrediting the Plaintiff's subjective complaints. The ALJ is required to consider all the evidence relating to the Plaintiff's subject complaints, including: 1) Plaintiff's daily activities; 2) the duration, frequency, and intensity of his pain; 3) precipitation and aggravating factors; 4) dosage, effectiveness, and side effects of his medication; and, 5) function restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). In so doing, the ALJ must also consider the claimant's prior work record, observations made by third parties, and the opinions of treating and examining physicians." *Polaski*, 739 F.2d at 1322.

An ALJ may not discount the Plaintiff's subjective complaints solely because the medical evidence fails to support them. *Id.* However, he "may disbelieve subjective reports because of inherent inconsistencies or other circumstances." *Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007) (quotation and citation omitted). The Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the ALJ's decision, we find the Plaintiff's argument to be meritless. The ALJ discredited the Plaintiff's subjective complaints for the following reasons: 1) the Plaintiff's treatment consisted of conservative treatment with no significant changes in his treatment regimen during the relevant time period; 2) the Plaintiff has not returned to his cardiologist since May 2012; 3) the Plaintiff had only three general office visits after his alleged onset date (May 2012); 4) the Plaintiff reported only occasional chest pain requiring the use of Nitroglycerine on only two occasions since his heart attack; 5) the results of physical examinations were benign; 6) there is no evidence to indicate that the Plaintiff's condition worsened between the time of his heart attack

9

and his alleged onset, or that it has deteriorated since that time; 7) the Plaintiff continues to smoke five to six packages of cigarettes per week; 8) the record contains no evidence documenting his alleged dizziness; 9) the Plaintiff regularly performed yard work, trimming around the flowers in his yard on a weekly basis, going outside frequently, driving a car, shopping for groceries, and attending church two to three times per week; 10) the Plaintiff was able to hear and understand the ALJ and admitted that his alleged hearing limitations would not prevent him from returning to work; 11)  the Plaintiff received unemployment benefits the third and fourth quarter of 2012; 12) the Plaintiff began drawing reduced social security retirement benefits at age 62; and, 13) the Plaintiff continued to work 40 plus hours per week between the date of his heart attack and his alleged onset date, in spite of his alleged impairments.  *See Moore v. Astrue*, 572 F.3d 520, 524-525 (8th Cir. 2009) (holding conservative treatment with over-the-counter medication and limited use of prescription medication inconsistent with disabling pain); *Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008) (lack of supporting medical evidence is one factor that may be considered in assessing credibility); *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003) (holding that ALJ may discount disability claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment); *Mouser v. Astrue*, 545 F.3d 634, 638 (8th Cir. 2008) (holding ALJ may consider failure to stop smoking in credibility analysis when it has a direct impact on the Plaintiff's impairments); *Whitman v. Colvin*, 762 F.3d 701, 708 (8th Cir. 2014) (holding receipt of unemployment can erode a Plaintiff's credibility);  *See Goff v. Barnhart,* 421 F.3d 785, 793 (8th Cir. 2005) (absent a showing of deterioration, working after the onset of an impairment is some evidence of an ability to work).

To the extent the Plaintiff argues that the ALJ's reasons for discrediting his subjective complaints are erroneous, we disagree.  To his physicians, the Plaintiff denied experiencing many

of the same symptoms he now claims to experience on a daily basis (*i.e.*, chest pain, shortness of breath). Treatment notes also fail to document evidence of arthritis, diagnoses of arthritis, or medications prescribed to treat arthritis. *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider). Likewise, although testing did reveal some hearing deficits, the Plaintiff failed to follow-up regarding hearing aids and admitted that his hearing impairment was not severe enough to affect his ability to work. Further, the absence of evidence to show that the Plaintiff filled his prescription for Citalopram or pursued further treatment for his alleged mood changes undermines his contention that these symptoms affect his ability to perform work-related activity. *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (lack of formal treatment by a psychiatrist, psychologist, or other mental health professional is a significant consideration when evaluating Plaintiff's allegations of disability due to a mental impairment).

And, although the Plaintiff's work history weighs in his favor, it appears that his reasons for leaving work might not have been based entirely on his alleged impairments. The Plaintiff began receiving partial social security retirement benefits at age 62. *See Kelly v. Barnhart*, 372 F.3d 958, 961 (8th Cir. 2004) (claimant's leaving work for reasons unrelated to medical condition detracted from credibility). Accordingly, we find that substantial evidence supports each of the credibility findings asserted by the ALJ. Therefore, the ALJ's credibility determination will stand.

**C.**     **RFC:**

In his final argument, the Plaintiff contests the ALJ's RFC determination. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545. A disability claimant has the burden of establishing his or her RFC. *Vossen v. Astrue,* 612 F. 3d 1011, 1016 (8th Cir. 2010). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including

11

medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Miller v. Colvin*, 784 F.3d 472, 479 (8th Cir. 2015) (citing *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

The ALJ concluded that the Plaintiff could perform a full range of medium work. In so doing, the Plaintiff insists that the ALJ improperly discredited the opinion of his treating doctor, Dr. Barton, who placed more restrictive limitations on his activities. In reviewing Dr. Barton's statement, however, we note that it is both inconsistent with his treatment records and with the records of the other physicians who treated the Plaintiff during the relevant time period. *Juszczyk v. Astrue*, 542 F.3d 626, 632 (8th Cir. 2008) (holding that the ALJ properly discounted a treating physician's opinion when it was inconsistent with his own treatment notes, as well as other medical opinions). For instance, his records fail to document any evidence of arthritis. There are no x-rays or other objective tests to document this alleged impairment. Moreover, neither Dr. Barton nor the other doctors examining the Plaintiff documented any pain, range of motion limitations, swelling, stiffness, or redness that is common among arthritis sufferers. In fact, he never even diagnosed the Plaintiff with arthritis. However, in his medical source statement, he documented joint deformity and prescribed limitations accordingly.

We also find that the Plaintiff's ability to continue to work 40 plus hours per week as a cement truck driver after his alleged heart attack is some evidence of his ability to perform work-related activities. Although he did stop working in May 2012, we can find no evidence to suggest that his condition deteriorated at that time. To the contrary, the evidence documents complaints of only mild, occasional chest pain with some decreased exercise tolerance following his heart attack. At the hearing, he admitted to taking only two Nitroglycerine tablets in the 18 months since his heart attack. Further, his cardiologist released him to return to work in October 2011, and he recommended only annual examinations.

The Plaintiff also sought out treatment with his general doctor on only three occasions status post heart attack and stent placement. Although the record contains two notations concerning possible mood changes following his heart attack, the Plaintiff's failure to fill the medication prescribed undermines his argument concerning the severity of these alleged symptoms. *See Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007) (a failure to follow a recommended course of treatment weighs against credibility). Further, there are no records to suggest that the Plaintiff complained of or was diagnosed with problems involving concentration, persistence, or pace. Clearly, had his condition been as limiting as he now alleges, he would have sought out more consistent treatment, and his complaints would be well documented in his medical records. They are not. Therefore, the undersigned finds substantial evidence to support the ALJ's RFC determination.

**IV.   Conclusion:**

Based on the foregoing, we recommend affirming the decision of the ALJ and dismissing the Plaintiff's Complaint.

**The parties have fourteen (14) days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. We remind the parties that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 21st day of August, 2015.

/s/ *Mark E. Ford*
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE